UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC-SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC#:                           │
│ DATE FILED:                     │
└─────────────────────────────────┘
```

UNITED STATES OF AMERICA,

v.

KEVIN WALKER,

Defendant.

No. 16-CR-327 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

On December 20, 2017, Defendant Kevin Walker was convicted by a jury of one count of conspiracy to commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951; three counts of Hobbs Act Robbery, in violation of 18 U.S.C. §§ 1951 and 2; and one count of brandishing a firearm in furtherance of each of the above charges, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii) and 2. Now before the Court is Walker's motion, pursuant to Federal Rule of Civil Procedure 33, for a new trial based on newly discovered evidence. Walker argues that several recordings of jail calls made by two cooperating witnesses who testified at his trial—which were not produced to him until midway through the testimony of the first such witness—would have influenced the jury's verdict. The government insists that a new trial is not warranted because this evidence does not qualify as newly discovered, solely constitutes impeachment material that is largely cumulative of evidence presented at trial, and would not have resulted in an acquittal. For the reasons that follow, Walker's motion is denied.

## BACKGROUND

### I.      Trial and Conviction

The charges against Walker stemmed largely from three armed robberies of gas stations in the Bronx, committed on February 25, 2016 and March 4, 2016.  The government's evidence at the twelve-day trial principally included testimony from cooperating co-conspirators Rodney Shirley and Kyell Clay, law enforcement witnesses, and victims, as well as physical evidence recovered from Walker's home and vehicle, and cell-site and license-plate-reader records indicating that Walker was in the immediate vicinity of the robberies.  Taken in the light most favorable to the government and resolving all issues of credibility in favor of the jury verdict, *see, e.g., United States v. Kozeny,* 667 F.3d 122, 139 (2d Cir. 2011), the evidence included the following.

The government presented surveillance video footage showing Walker's car in the vicinity of all three robberies at the times they were committed.  (Government Exhibit ("GX") 200-A to 200-F, 210, 220-A to 220-C).  Visible from one of these clips was a portion of a license plate registered to Walker.  (GX 400-ZZ).  Video evidence also depicted Clay and Shirley getting into the front and rear passenger seats of Walker's car (GX 200-F), and showed Clay wearing a black backpack with a white patch on the front packet containing the letters "BEI" (GX 400-WW).  Cell-site evidence for two phones recovered from Walker's person and apartment indicated that a phone associated with Walker travelled from Harlem to the Bronx, where it remained during the robberies, and then back from the Bronx to Harlem immediately after the robberies. (GX-700). The jury also received license-plate-reader records demonstrating that Walker's car travelled from Manhattan to the Bronx before the robberies, and back again after their commission. (GX 450-453).

According to testimony from Shirley and Clay, Walker planned each of the robberies and drove the crew to the gas stations in his burgundy 2007 Mercedes hatchback. (Tr. 724-25).  Walker also provided a .40 caliber pistol that he kept in a black bookbag in his car. (Tr. 743-46).  Walker remained in the car during the robberies to monitor local police frequencies and afterwards distributed the proceeds among the crew.  (*See* Tr. 796-800).

Shirley also provided the jury with details about each robbery.  On the mornings of February 25 and March 4, 2016, Walker drove his car to Harlem to pick up Shirley and Clay.  Each time, they proceeded to a check-cashing store on Lenox Avenue that they unsuccessfully attempted to rob, and then onto the Bronx to the gas stations. (Tr. 764-77).  After distributing the proceeds, Walker dropped off Shirley and Clay in Manhattan. (Tr. 799-801).  With respect to the third robbery, Shirley testified that he robbed the victim of "a couple hundred" dollars that he then provided to Walker.  (Tr. 840-41, 869).  On the drive back to Shirley's Harlem apartment, Walker heard a dispatch on his police scanner indicating that the victim had been robbed of $10,000.  (Tr. 869).  In the days after that robbery, Walker called and texted Shirley about that alleged discrepancy in proceeds.  (Tr. 870-78).  The above testimony was largely reiterated by Clay.  (*See* Tr. 1055-92, 1111-1200).

To further corroborate Shirley and Clay's account, the government introduced text messages between Walker and Shirley, indicating, for example, that they were in direct communication on the morning of March 4, 2016.  Six hours after the commission of the third robbery, Walker sent several text messages to Shirley that apparently referenced the $10,000 that Walker believed had been taken from the gas station attendant. (Tr. 871, GX 103-A-3).  Also published for the jury was a police-radio recording from that day, which reported a theft of $10,000.  (GX 8210).  Cell-site records indicated that, on the mornings of both February 25 and

March 4, 2016, Walker travelled from the immediate vicinity of his own apartment to the immediate vicinity of Shirley's apartment. (GX 700).  According to phone records presented to the jury, Walker and Shirley exchanged approximately 15 calls on those two dates.  (*Id.*).  Law enforcement witnesses also testified that they recovered from Walker's apartment a police scanner and a backpack identical to the one worn by Clay on surveillance footage.  (Tr. 508-16).

Shirley testified that he provided a full confession upon his March 15, 2016 arrest, implicated both Clay and Walker in the robberies, and identified a still surveillance image of Walker's car. (Tr. 1025-27)  According to Shirley, he saw Clay on approximately three occasions after his arrest–(1) during their March 17, 2016 arraignment; (2) in or around July 2016, when the two inadvertently crossed paths during a meeting with their attorneys; and (3) a few days before Shirley's testimony, on December 7, when the two crossed paths before court. (Tr. 882-84).  Shirley insisted that on none of these occasions did the two discuss the case, their testimony, or their cooperation.  (*Id.*).  Clay testified that he was arrested on or about March 30, 2016, whereupon he confessed to the robberies, implicated both Shirley and Walker, and identified Walker as the driver in a photographic array. (Tr. 1195-97).  Between the date of his arrest and his testimony, Clay said that he saw Shirley on approximately two occasions—once in the Manhattan Correctional Center and once near the trial courtroom on or about December 7—but that the two did not discuss their case or cooperation with one another.  (Tr. 1058, 1192-94).

The government concluded its presentation of evidence on December 18, 2017.  Walker did not present a defense.  On December 20, 2017, the jury found Walker guilty on all counts.

II.      **The Bureau of Prisons Calls**

On November 17, 2017—17 days before trial began—Walker sought from the government "[a]ll recorded jail and prison phone calls, emails, correspondence, and visitation logs from January 2014 to the present," involving Clay, Shirley, Tyrone Walker, Melvin Walker, Brad Burris, Gerald Cooper, and any other potential government witness. *See* Dkt. 149-1 ¶ 16(m)(viii). During a November 20, 2017 phone conference with defense counsel, the government represented that any such material relating to testifying witnesses was non-discoverable prior to their direct examination, pursuant to 18 U.S.C. § 3500. Dkt. 149. ¶ 7. The government accordingly informed defense counsel that it would not produce the material until November 27, 2017 unless counsel consented to a protective order that would bar Walker from reviewing the material until December 1, 2017. *Id.* ¶ 9. Defense counsel objected to that order. *Id.* ¶ 12. The Court subsequently endorsed the protective order, preventing Walker from reviewing such material except in the presence of defense counsel and authorized members of the defense team. *See* Dkt. 151.

On December 1, 2017, defense counsel filed an *ex parte* motion to subpoena the Bureau of Prisons ("BOP") for the requested material, which the Court granted. That material, 308 recorded telephones calls and 1,219 emails, was produced to defense counsel on December 12, 2017. Meanwhile, Shirley testified from December 7, 2017 until December 12, 2017 and Clay testified from December 12 to 13, 2017. Following a post-trial review of the produced materials, Walker became aware of phone calls dating back to July 2017 from Clay and Shirley (the "BOP Calls"). On December 20, 2020, Walker filed the instant motion for a new trial, arguing that those calls constitute newly discovered evidence that would have influenced the jury verdict. Dkt. 243 ("Mot."). Walker also argues that the failure of the prosecution to timely produce those materials violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963).

## DISCUSSION

Federal Rule of Criminal Procedure 33 authorizes the court, upon a defendant's motion, to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Civ. P. 33(a). While a motion for a new trial grounded on newly discovered evidence must be filed within three years after a guilty verdict, a motion grounded "on any [other] reason . . . must be filed within 14 days after the verdict." Fed. R. Civ. P. 33(b).

Because "[t]he ultimate test" in determining a Rule 33 motion "is whether letting a guilty verdict stand would be a manifest injustice," a court should only grant such a motion if it has "a real concern that an innocent person may have been convicted in light of the evidence presented and the credibility of the witnesses." *United States v. Walker*, 974 F.3d 193, 208 (2d Cir. 2020) (internal quotation marks omitted). "A district court must exercise great caution in determining whether to grant a retrial on the ground of newly discovered evidence, and may grant the motion only *in the most extraordinary circumstances*." *United States v. Imran*, 964 F.2d 1313, 1318 (2d Cir. 1992) (internal quotation marks omitted; emphasis in *Imran*).

It is well-established that a defendant seeking Rule 33 relief on the basis of newly discovered evidence must make the following showing:

> "(1) the evidence [was] newly discovered after trial; (2) facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence; (3) the evidence is material; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence would likely result in an acquittal."

*United States v. Forbes*, 790 F.3d 403, 406-07 (2d Cir. 2015) (quoting *United States v. Owen*, 500 F.3d 83, 88 (2d Cir. 2007)). The government argues that Walker has failed to meet his burden of proof on several of these factors. The Court agrees and finds that the overwhelming evidence of Walker's guilt presented at trial assuages any concerns about a wrongful conviction.

As an initial matter, it is not clear to the Court that the BOP Calls qualify as newly discovered evidence within the meaning of Rule 33.  The underlying recordings were produced to Walker on December 12, 2017—eight days before the end of his trial.  Walker argues that the timing of the disclosure in combination with the restrictions of the protective order made it a "logistical impossibility" for him to review the recordings prior to end of trial.  Mot. at 13.  The government maintains the recordings are not new because they could have been discovered by counsel prior to or during trial, and because Walker could have more diligently sought to obtain the evidence.  The Court tends to agree.

In order for evidence to qualify as newly discovered, "not only must the defendant show that the evidence was discovered after trial, but he must also demonstrate that the evidence could not with due diligence have been discovered before or during trial." *Forbes*, 790 F.3d at 409 (internal quotation marks omitted).  Here, there is no dispute that Walker possessed the underlying material during his trial.  At least one court within this District has held that possession of evidence during trial precludes a finding that such evidence is "newly discovered" even if the Defendant did not review the material until later.  *See United States v. Corley*, No. 13-CR-48 (AJN), 2020 WL 4676650, at *5 (S.D.N.Y. Aug. 11, 2020); *see also Owen*, 500 F.3d at 89–90 ("One does not 'discover' evidence after trial that one was aware of prior to trial. To hold otherwise stretches the meaning of the word 'discover' beyond its common understanding.").  Walker points to no case that has held otherwise.  It may well have been a challenge for the defense to "use the 308 recorded calls and 1,219 emails in any meaningful way during the limited time left in the trial."  Reply at 3. Nonetheless, the Court would have to adopt a strained definition of "newly discovered" in order to conclude that the BOP Calls qualify as such.

Relatedly, the Court is not convinced that Walker could not have been made aware of these materials at an earlier stage had he exercised reasonable diligence.  Walker argues that he acted diligently to obtain the evidence before trial, as evidenced by his November 17, 2017 demand to the government, his November 25, 2017 motion to compel discovery, and his December 1, 2017 subpoena to the BOP.  Mot. at 13.  That may be true.  Yet Walker's exercise of some diligence in discovery does not require the Court to separately conclude that these calls "could not have been discovered, exercising due diligence, before or during trial."  *United States v. Zagari*, 111 F.3d 307, 322 (2d Cir. 1997).   For example, Walker could have subpoenaed the BOP at an earlier date or sought to adjourn the trial in order to conduct a more fulsome review of the produced material.  Walker does not explain why he was unable to review this material while in the presence of defense counsel or authorized members of the defense team, as was permitted by the November 27, 2017 protective order.  *See* Dkt. 151.  In sum, while the Court recognizes that time constraints and the requirements of the protective order hampered Walker's ability to review the BOP Calls prior to the culmination of trial, it is not convinced that those difficulties justify a finding that those calls are newly discovered as a legal matter.

Even assuming that the BOP Calls qualify as newly discovered evidence, the Court would still conclude that Walker has not met his burden of proving that the BOP Calls were "material, not cumulative, and that [their] admission . . . would probably lead to an acquittal," *Owen*, 500 F.3d at 87 (internal quotation marks omitted).  According to Walker, the purportedly new evidence gleaned from the BOP Calls demonstrates the following: "Clay [was] shielding Shirley from culpability by pointing blame at Mr. Walker," "Clay [was] preparing to tailor his testimony with his attorney to assist the prosecution,"[1] and Shirley lied as well as admitted to "drug smuggling in

---

[1] Walker and the government agree that the call is not privileged because Clay was on notice of the "presence of an unsympathetic third party—BOP—listening in," and that there was no reasonable expectation of confidentiality in his

prison," gang membership in prison, and potential statutory rape. Mot. at 5-10. Walker contends that this evidence impugns the credibility of the only two witnesses that provided "direct evidence at trial that [he] participated in the robberies that Clay and Shirley committed," *id.* at 13-14, and indicates that both witnesses "knowingly lied to the government in their proffer and cooperation sessions, and that they then lied under oath at trial," Reply at 3. The government argues that Walker misconstrues these calls and overstates their significance. The Court agrees and finds that none of the purportedly new evidence would have affected the jury's verdict so as to warrant relief under Rule 33.

First, the Court does not agree with Walker that "Shirley's conversations indicat[e] that Clay went out of his way to shield Shirley and instead lay blame with [] Walker." Mot. at 14. During the July 2017 calls that purportedly support this argument, Shirley made the following statements: "[Clay] didn't tell on me he told on the other n---- —he could of told on me but he didn't;" "That n---- is telling on — the other n---- that he got locked up with;" "I don't know what [Clay] told. I mean, he didn't tell on me, he told on the other n----…." Mot. at 5. These calls demonstrate only that Shirley labored under the mistaken impression that Clay was cooperating against Walker, but not Shirley—when in fact Clay implicated both men on the day he was arrested (*see* Tr. 1195-97). The Court finds that this misapprehension is immaterial to the case against Walker. *See United States v. Diaz,* 176 F.3d 52, 106 (2d Cir. 1999) (stating that evidence is "'material' to the jury's verdict" when it is "relevant to the merits of the case").

Second, the contention that the September 2017 call between Clay and his attorney reveals that Clay was molding his testimony to bolster the government's case against Walker is entirely

---

communications. *See United States v. Mejia*, 655 F.3d 126, 134 (2d Cir. 2011). The government nonetheless argues that Walker should be precluded from relying on any calls between Clay and Shirley and their respective attorneys based on this Court's limiting order of December 6, 2017. *See* Dkt. 167 at 3. The Court need not address this argument because, for the reasons stated below, the call itself provides no grounds to grant Walker a new trial.

without merit.  In that call, Clay indicates that he is nervous about his upcoming testimony in Walker's trial, and his attorney reassures him that "it's going to be fine."  Mot. at 6.  Having reviewed the call, the Court finds no evidence to suggest that Clay intended to manipulate his testimony.

The last category of evidence comprises calls by Shirley in which he alludes to the fact that he committed several bad acts that were not revealed to the jury.  In the first series of calls, made between July 19 and 21, 2017, Shirley appears to be attempting to procure "K2," *i.e.*, synthetic marijuana.  Mot. at 9.  At trial, Shirley testified only that he told the government that he had sold crack cocaine from 2004 to 2007, and marijuana from 2010 to 2015. (Tr. 601-604, 669).  In the second series of calls, placed between July and September 2017, Shirley claims that he is "on my heavy Crip shit," "on Crip time," and that the "Crip n----s in here we look out for each other." Mot. at 9.  On cross-examination, Shirley testified that he was "no longer affiliated" with the Rollin 60s Crips, having separated from that group at the end of 2009. (Tr. 918).  In the final call proffered by Walker, a woman conversing with Shirley calls him a liar and tells him "I don't believe nothing you say!," in an apparent reaction to Shirley's statements about a girl who "gassed" him by telling him "she was one age" before he found out that she was younger.  Mot. at 9-10.  Although these statements call into question Shirley's veracity—and arguably contradict portions of his trial testimony—they do not justify relief under Rule 33.

The BOP Calls would be relevant to a jury insofar as they tend to impeach the credibility of these government witnesses.  Such material is, however, generally excluded from the category of newly discovered evidence warranting relief under Rule 33.  *See Forbes*, 790 F.3d at 406-07; *see also United States v. Reyes,* 49 F.3d 63, 68 (2d Cir. 1995) ("New evidence that is merely impeaching will not ordinarily justify a new trial.").  That principle is particularly pertinent in this

case, as the new evidence is largely cumulative of impeachment material that Walker already presented to the jury.  As the government notes in its opposition, Shirley's credibility was vigorously attacked at trial.  Shirley admitted on direct examination that he told several lies to law enforcement, including his statement that he had tossed the gun on the date of his arrest and that his role in the third robbery was limited to that of a lookout.  (Tr. 880-82).  Defense counsel confronted Shirley about the seven years in which he was affiliated with the Crips (Tr. 918-19), about his prior arrests and convictions for drug possession (Tr. 990-96), about the many aspects of the conspiracy that he did not initially disclose to law enforcement (Tr. 954-57), and about his motives for cooperating (Tr. 944, 949, 968, 1002-1012).  The same is true of Clay.  On cross-examination, defense counsel repeatedly confronted Clay about multiple lies he told to law enforcement (Tr. 1117, 1139-45, 1151), about his prior convictions for narcotics and weapons charges (Tr. 1170-75), about the terms of his cooperation agreement (Tr. 1187-95) and about his motives for cooperation (Tr. 1125-34, 1156-59, 1162).  Because this new "impeachment evidence merely furnishes an additional basis on which to impeach [] witness[es] whose credibility has already been shown to be questionable," it is "*not* material" for purposes of Rule 33.  *United States v. Parkes,* 497 F.3d 220, 233 (2d Cir. 2007) (internal quotation marks omitted; emphasis in original); *see also United States v. Gambino,* 59 F.3d 353, 366 (2d Cir. 1995) ("Nondisclosure of cumulative evidence tending only to further impeach a witness' general credibility is not grounds for granting a Rule 33 motion.").

Finally, Walker has failed to convince the Court the admission of the above evidence "would likely result in an acquittal."  *Owen*, 500 F.3d at 88.  As noted above, the evidence of Walker's guilt presented at trial was overwhelming.  It is therefore unlikely that a jury would have reached a different verdict had it received the evidence contained in the BOP Calls.  First, Clay

and Shirley both identified Walker to law enforcement officials on the day they were arrested, well before any cooperation agreements were reached with the government.  Second, their testimony was corroborated by multiple independent sources: by cell-phone records that placed Walker's phone at the scene of each the three robberies, by video surveillance and license-plate-reader records that placed Walker's car in the vicinity of each of the robberies, by text messages and call logs demonstrating communication between Walker and Shirley at the time of the robberies, and by recovery from Walker's apartment of the same backpack that Clay is depicted as wearing in surveillance footage.  Considering the abundant corroboration of the testimony of Shirley and Clay, the introduction of additional impeachment evidence would not likely have led the jury to discount their account of the robberies.

For substantially similar reasons, the Court concludes that any failure on the part of the government to disclose the BOP Calls would not warrant a new trial pursuant to *Brady v. Maryland.*  This is true even if the Court were to accept Walker's arguments that the BOP acted as an "arm of the prosecutor" in suppressing this evidence.  *See* Mot. at 21.  Under *Brady* and its progeny, "failure to disclose favorable information will result in an order of retrial" if the undisclosed information meets an "exacting standard of materiality."  *United States v. Spinelli*, 551 F.3d 159, 164 (2d Cir. 2008).  Pursuant to that standard, undisclosed material "is deemed material so as to justify a retrial only 'if there is a reasonable probability that, had [it] been disclosed to the defense, the result of the proceeding would have been different.'"  *Id.* (quoting *Kyles v. Whitley,* 514 U.S. 419, 433–34 (1995)).  As discussed above, it is improbable that the introduction of the BOP Calls would have changed the jury's verdict.  Accordingly, any failure of the government to disclose this information does not warrant ordering a new trial.

In sum, the Court is not persuaded that the interests of justice require vacating Walker's conviction and granting a new trial.  Given the substantial evidence of Walker's guilt that was presented at trial, the Court harbors no concerns that the introduction of the BOP Calls would have affected the jury's verdict, or that Walker is innocent of any the charges for which he is presently imprisoned.

## CONCLUSION

For the foregoing reasons, Walker's motion for a new trial is DENIED. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 243.

SO ORDERED.

Dated:   June 9, 2021
         New York, New York

_____
Ronnie Abrams
United States District Judge